IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VANITA L. BELL, | ) | CASE NO. 1:09 CV 94 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Vanita Bell's application for Disability Insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§416(i), 423 and 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

**I. INTRODUCTION and PROCEDURAL HISTORY**

On April 11, 2005 Plaintiff filed an application for Disability Insurance benefits, and on April 26, 2005 Plaintiff filed an application for Supplemental Security Income (Tr. 16, 62-64, 361-63). In both applications, Plaintiff alleged disability beginning on September 23, 2002 due to deafness in her left ear, arthritis, a hernia, diabetes, depression and pain (Tr. 92, 393, 405). Born on December 4, 1971, Plaintiff was 37 years old at the time of the ALJ's determination and a "younger individual" for purposes of the Social Security regulations (Tr. 22, 24, 62, 382). *See*

20 C.F.R. §§404.1563, 416.963. Plaintiff completed the tenth or eleventh grade and was in some special education classes (Tr. 232, 382-83). She has past relevant work as a fast food worker, telemarketer, parking lot attendant, and cashier (Tr. 22, 425-26).

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr. 16, 48, 52-53, 361-63, 365-71). Plaintiff requested a hearing and, on August 31, 2005, appeared and testified before Administrative Law Judge Dennis James LeBlanc (the "ALJ") (Tr. 47, 378-435). The ALJ issued a written decision on March 22, 2007 in which he found at Step Five of the five-step sequential evaluation[1] that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work existing in significant numbers in the national economy

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520, 416.920. The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

and, therefore, was not disabled (Tr. 16-24). Specifically, the ALJ found that Plaintiff retained the capacity to do light work with the following limitations: lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk for 6 hours in an 8-hour workday; occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally stoop; reach, but not overhead; frequently handle and finger; avoid hazards such as dangerous machinery and heights; only simple, repetitive tasks; and only occasional interaction with co-workers and no interaction with the public (Tr. 20). The ALJ then concluded based on the vocational expert's testimony that a significant number of jobs, including the jobs of assembler, inspection worker and stocker, accommodated Plaintiff's RFC (Tr. 23, 426-30). Plaintiff then requested review of the ALJ's decision from the Appeals Council (Tr. 11-12). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 6-10). On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

## II. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits and Supplemental Security Income only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  See *Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. See *Garner*, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

A. **Whether the ALJ Properly Evaluated the Medical Source Opinions and Plaintiff's Somatoform Disorder in Determining Plaintiff's RFC**

Plaintiff argues that the ALJ improperly discarded the opinions of her 'treating therapist,' Ms. Hameed and the opinion of examining physician, Dr. Leventhal. Plaintiff complains that the ALJ erred by failing to adopt these source's opinions regarding her mental impairments and, in particular, their opinions concerning the limitations Plaintiff experiences as a result of her somatoform disorder. Plaintiff also argues that the ALJ failed adequately to consider the effects of her somatoform disorder in determining her RFC.

Under 20 C.F.R. § 1527(d), an ALJ is required to evaluate all the medical opinions he or she receives. However, the regulations also recognize that not all sources should be treated equally. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Only "acceptable medical sources," such as licensed physicians and psychologists, can establish the existence of a medically determinable impairment, give medical opinions, and be considered "treating sources," whose opinions may be entitled to controlling weight, under 20 C.F.R. §§ 404.1502 and 416.902. SSR 06-03p, 2006 WL 2329939 at *2. However, information from "other sources may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* In evaluating the opinions of "other sources," an ALJ should use the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532 (6th Cir. 2007). The ALJ also "generally should explain the weight given to opinions for these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision

5

allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p, 2006 WL 2329939.

The ALJ assessed Ms. Hameed's opinion as follows:

> The claimant's treating therapist, Felicia Hameed, MSSA, LSW, completed a residual functional capacity assessment (mental) on July 10, 2008 and indicated that the claimant was markedly or extremely impaired in her ability to sustain concentration and persistence and also indicated that the claimant was extremely impaired in her ability to accept instructions and respond appropriately to criticism from supervisors and extremely impaired to respond appropriately to changes in the work setting and markedly impaired in her ability to be aware of hazards or travel to unfamiliar places. Yet, Ms. Hameed is not considered to be an acceptable medical source in 20 CFR 404.1513(a), and her opinion has been considered, but received little weight. Ms. Hameed's assessment is inconsistent with her own patient notes from MetroHealth Broadway Center, where she noted that the claimant's symptoms were mild. (Exhibits 13F, 19F)

(Tr. 20).

Contrary to Plaintiff's suggestion, the above passage makes clear that the ALJ did not discard Ms. Hameed's opinion solely because Ms. Hameed is not an "acceptable medical source." Rather, the ALJ explicitly stated that he considered Ms. Hameed's opinion and explained what weight he gave to her opinion and why. Specifically, the ALJ explained that he gave little weight to Ms. Hameed's opinion because it was inconsistent with her patient notes which documented mild symptoms. The weighing of medical opinions is the province of the Commissioner, and it is the responsibility of the ALJ to resolve conflicts in the evidence, *see Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 803 (6th Cir. 2008), although he or she is bound by the Social Security Regulations when doing so. See *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004). As Defendant notes, Ms. Hameed's patient notes in fact document mild symptoms, and her opinion does not explain the reasons for her subsequent assessment of debilitating

symptoms. Additionally, nothing in the record indicates that Ms. Hameed examined Plaintiff more than once; thus to the extent that an "other source" gains "special knowledge" about a claimant's impairments by dealing with the claimant on a repeated basis, that factor would not be at play here. Based on the above, the Court concludes that the ALJ's treatment of Ms. Hameed's opinion was wholly in keeping with his obligations under the rules and regulations, and that therefore, Plaintiff's arguments with respect to that opinion are without merit.

The ALJ noted in his written decision that Dr. Leventhal diagnosed Plaintiff with somatoform disorder (Tr. 19). He addressed that opinion as follows:

> At the time of the consultative psychological evaluation, Dr. Leventhal concluded that the claimant was moderately impaired in her ability to relate to others (Exhibit 8F). With regard to concentration, persistence or pace, the claimant has moderate difficulties. While Dr. Leventhal felt that the claimant was markedly impaired in her ability to maintain attention and concentration, the fact that the claimant is able to attend school suggests that she is only moderately impaired in her ability to maintain attention and concentration. Also, at the time of her consultative physical evaluation, Eulogio Sioson, M.D. noted that the claimant could maintain attention and concentration. Records from MetroHealth Broadway Center also note sustained concentration. It should also be noted that the records from MetroHealth Broadway Center describe the claimant's symptoms as mild. (Exhibits 3F, 8F, 13F)

(Tr. 19-20).

Plaintiff appears to suggest that because the ALJ accepted Dr. Leventhal's diagnosis of somatoform disorder, he also was required to accept Dr. Leventhal's opinions regarding the severity of Plaintiff's symptoms. However, that is not the case. As noted above, the weighing of medical opinions is the province of the Commissioner, and it is the responsibility of the ALJ to resolve conflicts in the medical evidence, *see Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 803 (6th Cir. 2008). The ALJ discounted Dr. Leventhal's conclusions about the severity of Plaintiff's mental symptoms

because they were inconsistent with patient notes, the observations of another consultative (physical) examiner, and Plaintiff's activities. The opinions of state agency physicians Dr. Matyi and Dr. Pawlarczyk that Plaintiff's mental symptoms do not markedly limit her abilities to perform work-related tasks, and their rejection of Dr. Leventhal's opinion on the basis that it is not supported by the record provide additional support for the ALJ's decision. Accordingly, the Court finds that the ALJ's rejection of Dr. Leventhal's opinion is supported by substantial evidence.

In addition to arguing that the ALJ failed to consider adequately the opinions of Ms. Hameed and Dr. Leventhal in assessing her somatoform disorder, as noted above, Plaintiff also argues that the ALJ failed to consider the impact of that disorder on her ability to work. However, the ALJ explicitly found that somatoform disorder numbered among Plaintiff's severe impairments (tr. 18), and his written opinion specifically discussed the limitations that Plaintiff experiences as a result of that disorder. In discussing whether or not Plaintiff met or equaled Listing 12.07, the listing for Somatoform Disorders, the ALJ stated that Plaintiff's abilities to maintain social functioning and to maintain concentration, persistence and pace were moderately limited, and that her activities of daily living were mildly impaired (Tr. 19-20). As the ALJ explained, these limitations are supported by the record evidence, including the state agency opinions, the patient notes, and Plaintiff's activities (Tr. 19-20). The ALJ further found, based on these limitations and others, that Plaintiff retained the capacity for light work with the following restrictions: lift and carry no more than 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for six hours in an eight-hour day; occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; occasionally stoop and reach, except overhead;

frequently handle and finger; avoid hazards such as dangerous machinery and heights; and only work involving simple, repetitive tasks with only occasional interaction with co-workers and no interaction with the public (Tr. 20). Plaintiff claims that these limitations do not account for the effects of her somatoform disorder, but she does not indicate what additional limitations the ALJ should have discussed in his written analysis or included in his RFC determination. Based on the above, the Court concludes that the ALJ did not err in either his consideration of Plaintiff's somatoform disorder or in his RFC assessment.

B.	Whether the ALJ Properly Evaluated Plaintiff's credibility, Including her Allegations of Pain

Plaintiff argues that the ALJ erred by failing to analyze Plaintiff's allegations of pain fully and according the rules and regulations. In particular, Plaintiff complains that the ALJ failed to consider the impact of Plaintiff's somatoform disorder in assessing her credibility. Plaintiff also complains that none of the ALJ's reasons for discounting her credibility are supported by the evidence.

The Court recognizes that pain alone may be sufficient to support a claim of disability. *See Grecol v. Halter,* 46 Fed. Appx. 773, No. 01-3407 (6th Cir. Aug 29, 2002) (unpublished); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir 1984). However, a claimant's subjective assertions of pain, standing alone, will not suffice. In most disability benefits cases, for the ALJ to find disabling pain, there must be: (1) objective evidence of an underlying medical condition; and (2) either, (a) objective medical evidence *confirming* the severity of the alleged pain arising from that medical condition, or (b) the objectively determined medical condition must be of a severity which can *reasonably be expected* to give rise to the alleged pain. *See Buxton v. Halter* 246 F.3d

762, 773 (6th Cir. 2001); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986).

The *Duncan* test, however, is not the end of the analysis. The Commissioner must consider other factors that may or may not corroborate Plaintiff's allegations of pain. *See Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525,531 (6th Cir. 1997); *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1986); 20 C.F.R. § 416.929(c)(2). The other factors may include: statements from the claimant and the claimant's treating and examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. § 416.929(a), (c)(3). It is the province of the ALJ to assess a claimant's credibility, and "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The question presented in this case concerns the circumstances under which an ALJ may discredit the testimony of a claimant who suffers from a somatoform disorder. On the one hand, "[a] somatoform disorder does not insulate a claimant from an ALJ's credibility finding." *Gentry v. Shalala*, 9 F.3d 112 (Table), 1993 WL 438622 at *1 (7th Cir. Oct. 28, 1993); *see also Cruse v. Comm'r*, 2006 WL 681165 (W.D. Tenn. Mar. 15, 2006) (stating that "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the

medical reports, claimant's testimony, and other evidence . . . . even where a somatoform disorder, such as conversion disorder, is present") (internal citations and punctuation omitted); *Chrisley v. Sec. of Health and Hum. Servs.*, 33 F.3d 54 (Table), 1994 WL 421735 at *1 (6th Cir. Aug. 11, 1994) (finding, with little discussion, no merit to the claimant's argument that the ALJ failed to consider her somatoform disorder in assessing her credibility and allegations of pain); *Kolka v. Chater*, 70 F.3d 1279 (Table), 1995 WL 713218 at *2 (9th Cir. Dec. 4, 1995) (holding that the ALJ did not err in his credibility determination where the ALJ relied upon the objective medical evidence and inconsistencies and contradictions in the claimant's testimony in finding that, although the claimant suffered from somatoform disorder, the claimant nevertheless exaggerated his pain).

On the other hand, where the claimant has a somatoform disorder, an ALJ may not reject a claimant's subjective complaints of pain simply because they are not supported by the objective medical evidence. *Easter v. Bowen*, 867 F.2d 1128, 1130-31 (8th Cir. 1989). This is because a somatoform disorder "causes [a claimant] to exaggerate her physical problems in her mind beyond what the medical data indicate." *Id.* at 1130. Nevertheless, an ALJ may reject the subjective complaints of a claimant suffering from somatoform disorder, so long as "the ALJ explicitly considers the somatoform disorder and makes express findings regarding why the claimant's testimony is not credible." *Rodewald v. Astrue*, 2009 WL 1026286 at *22 (D.Minn. Apr. 16, 2009) (citing *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995)).

A review of the ALJ's opinion reflects that the ALJ applied the appropriate framework in assessing Plaintiff's symptoms and credibility and that substantial evidence supports that assessment. In this case, the ALJ explicitly found that Plaintiff suffered from a somatoform

disorder, analyzed the severity of that disorder in his written opinion and engaged in a credibility analysis that discussed most, if not all, of the factors enumerated in *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1986) and 20 C.F.R. § 416.929(c)(2). Specifically, the ALJ discussed the findings and diagnoses made by Plaintiff's physicians, the treatment that Plaintiff has undergone and the medications she has taken, the types of functional limitations Plaintiff claims to experience, inconsistencies in Plaintiff's statements, and Plaintiff's activities and efforts to work. Among the ALJ's stated reasons for finding Plaintiff less than fully credible were the following:

> The claimant's testimony at her hearing was not fully credible. She stated that she has had right shoulder pain since her motor vehicle accident although at the time of the accident, hospital records noted that she injured her left shoulder. She also claimed that she can only lift up to five pounds, but also stated that she holds her grandchild who is six months old and weighs over ten pounds. She also stated that she attends school and is in class for three hours at a time but stated that she cannot sit for very long. She stated that she is able to stand during class but also testified that she can only stand for 15-20 minutes. Since the alleged onset date, the claimant accepted employment at a hair salon and as a waitress, which is somewhat inconsistent with her allegations of disability and more consistent with the residual functional capacity set forth above. She stated that she had to quit working as a waitress because of her hearing problems, but apparently was able to perform all the physical demands of such work. While the claimant also has mental impairments, as discussed above, these impairments support no more than "moderate" limitations in her ability to function and would permit her to perform simple and repetitive tasks with reduced interaction with others at work. Therefore, based on the evidence set forth above, the claimant's allegations regarding her disability are less than fully credible

(Tr. 22).

Plaintiff claims that none of these reasons is supported by the evidence and appears to argue that the ALJ erred by failing to accept her explanations regarding her level of activity. In particular, Plaintiff complains that: (1) although the ALJ stated that Plaintiff's attempts to work were inconsistent with her allegations of disability, Plaintiff's testimony reflects that she had difficulty getting to work on time and adequately meeting the demands of the job, and that she

ultimately was fired; (2) although the ALJ found Plaintiff not to be fully credible because she misstated which shoulder she injured in a car accident, this misstatement probably was just a mistake and an understandable consequence of Plaintiff's borderline intellectual functioning; and (3) although the ALJ stated that he was discounting Plaintiff's credibility because Plaintiff's enrollment in school was inconsistent with her allegations of disabling symptoms, Plaintiff was having problems in school – including with attendance – and Plaintiff's teachers made accommodations for her.  However, it is well-settled that an "ALJ is not required to accept a claimant's subjective complaints," see *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003), and the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility" during the hearing, see *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  It also is well-settled that an ALJ may consider a claimant's activities and efforts to work when assessing her credibility.  See *Felisky*, 35 F.3d at 1039; 20 C.F.R. § 416.929(c)(2)  Thus, contrary to Plaintiff's suggestion, the ALJ was not required to accept at face value any of Plaintiff's testimony regarding her alleged problems and was entitled to discredit that testimony to a certain degree where he found conflicts in the evidence.  The ALJ's credibility assessment is supported by substantial evidence; thus, Plaintiff's argument is without merit.

**C.     Whether the ALJ Erred at Step Five by Failing to Include a Limitation in his Hypothetical for Frequent Handling and Fingering**

Plaintiff argues that the ALJ erred by relying on VE testimony in response to a hypothetical that did not accurately reflect her limitations.  Defendant argues that any error on the part of the ALJ with respect to this issue was harmless because the ALJ's ultimate RFC determination accommodates all of the jobs that the VE identified.

Under *Varley v. Sec. of Health and Hum. Serv.*, 820 F.2d 777, 779 (6th Cir. 1987), "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" Should the hypothetical fail to accurately describe a claimant's physical and mental impairments, the defect is fatal to both the vocational expert's testimony and the ALJ's reliance upon that testimony. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). However, as a general rule, "[n]o principle of administrative law or common sense requires a reviewing court to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Thus, to the extent any defect with the ALJ's hypothetical was harmless, the Court finds no reason to remand.

The ALJ in this case posed three hypotheticals to the VE, but only the first two hypotheticals are relevant to the Court's analysis here.[2] In the first hypothetical, the ALJ asked the VE to assume an individual with the same education, age, and work experience as Plaintiff with the following abilities and limitations: able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk for six hours in an eight-hour day; able to sit for about 6 hours; occasionally able to climb ramps and stairs, but never able to climb ladders,

---

[2]In the third hypothetical, the ALJ asked the VE to assume a person with the same age, education and work experience as Plaintiff with the following abilities and limitations: limited to lifting no more than ten pounds; able to stand and sit throughout an eight-hour work day, but only if the person is permitted to change positions from sitting to standing at intervals of at least 30 minutes; occasionally able to climb ramps and stairs, but never able to climb ladders, ropes or scaffolds; able to stoop occasionally; unable to reach overhead; and must avoid hazards such as machinery and heights. The VE responded that such a person would be able to perform the sedentary jobs of ticket seller, bench assembler, and inspection worker. Neither party makes any arguments with respect to this hypothetical.

ropes or scaffolds; able to stoop occasionally; unable to reach overhead; must avoid hazards such as machinery and heights; limited to simple, repetitive tasks; limited to occasional interaction with co-workers and only incidental interaction with the general public.  The VE responded that such a person would not be able to perform any of Plaintiff's past relevant work, but that such a person could perform the following jobs: (1) small products assembler, DOT number 706.684-022; (2) inspector and hand packager, DOT number 559.687-074; and (3) sorter and stocker, DOT number 222.687-010.

In the second hypothetical, the ALJ asked the VE to assume a person with the same abilities and limitations as articulated in the first hypothetical, except that the person also would be limited to only occasional reaching, frequent handling and frequent fingering.  The VE responded that such a person would be unable to perform any work existing in significant numbers in the national economy.

The ALJ determined in his written decision that Plaintiff retained the RFC to do light work with the following additional limitations: able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk for six hours in an eight-hour day; able to sit for about 6 hours;  occasionally able to climb ramps and stairs, but never able to climb ladders, ropes or scaffolds; able to stoop occasionally; able to reach, but not overhead; limited to frequent handling and fingering; must avoid hazards such as machinery and heights; limited to simple, repetitive tasks; and limited to occasional interaction with co-workers and only incidental interaction with the general public.  The ALJ then determined, based on the VE's testimony, that

Plaintiff can perform jobs existing in significant numbers in the national economy.  Specifically, the ALJ determined that Plaintiff can perform the jobs of assembler, inspector, and stocker.[3]

Although Plaintiff is correct that the ALJ erred by failing to ask the VE a hypothetical that accurately reflected his RFC, the ALJ's error with respect to this issue was harmless.  The limitations contained within the ALJ's RFC determination mirror those contained in the ALJ's first hypothetical, except that the RFC determination contains limitations for frequent handling and fingering.  The RFC does not include a limitation for occasional reaching.  The second hypothetical – to which the VE responded there would be no jobs – differs from the first hypothetical only in its inclusion of limitations for frequent handling and fingering and for *occasional reaching*.  As Defendant notes, each of the jobs cited by the VE requires the ability to handle, finger *and reach frequently*.  See Dictionary of Occupational Titles 706.684-022, 612.687-010 and 559.637-004.  Thus, the reason that the second hypothetical precluded the jobs identified in response to the first hypothetical appears to be the limitation for occasional reaching. Since the ALJ's RFC determination – which includes limitations for frequent handling and fingering but *not* occasional reaching – accommodates all of the jobs identified by the VE in response to the first hypothetical – all of which require frequent handling, fingering, and

---

[3]The ALJ cites the correct DOT numbers for the positions of assembler and inspector – 706.684-022 and 559.637-004, respectively – but cites an incorrect DOT number, 612.687-010, for the position of stocker.  DOT number 612.687-010 corresponds with the position of heat reader – a job that, incidentally, requires constant handling and therefore would appear to be unavailable to a person with Plaintiff's RFC.  The DOT number for the sorter and stocker position, 222.687-010, differs from that of the heat reader position, 612.687-010, only in the first two digits.  The VE cited the correct DOT number for the sorter and stocker position, however, and the ALJ relied on the VE's testimony in determining that Plaintiff was not disabled.  In light of the foregoing, the ALJ's citation to DOT number 612.687-010 for the position of sorter and stocker appears to the Court merely to be a typographical error.

reaching – the ALJ's failure specifically to include limitations for frequent handling and fingering in a hypothetical to the VE constituted harmless error.

## V.  **DECISION**

For the foregoing reasons, the Court finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: January 15, 2010.